## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUNOCO PIPELINE LP, ) | |
| ) | |
| *Plaintiff*, ) | Civil Action No.  2:25-cv-03694 |
| ) | |
| v. ) | |
| ) | |
| DANIEL LA HART and KATHERINE LA ) | |
| HART, ROBERTA GELTCH and JAMES ) | |
| GELTCH, ANDREW MELA and ) | |
| HEATHER MELA, W. SCOTT MILLER ) | |
| and MARYIDA MILLER, JOHN VANNI ) | |
| AND ANGELA VANNI, KEVIN ) | |
| WOJNOVICH and KRISTINE ) | |
| WOJNOVICH, BASIL TSOLAKIS, ) | |
| FOTEINI TSOLAKIS, GERALD ) | |
| TSOLAKIS, and MANTHA ) | |
| NIKOLOUDAKI, individually and on behalf ) | |
| of a class of others similarly situated, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     PARTIES ................................................................................................................... 3

III.    JURISDICTION AND VENUE .................................................................................. 4

IV.     FACTUAL ALLEGATIONS ...................................................................................... 5

        A.      Discovery of the Release ........................................................................... 5

        B.      Response to the Release.............................................................................. 6

        C.      PADEP....................................................................................................... 8

        D.      SPLP'S Engagement with the Local Community.................................................. 9

        E.      Defendants' Unlawful Attempts to Regulate the Safety of SPLP's Pipeline
                Facilities.......................................................................................... 10

V.      CLASS ALLEGATIONS ......................................................................................... 16

VI.     CAUSES OF ACTION ............................................................................................ 19

VII.    PRAYER FOR RELIEF .......................................................................................... 21

## TABLE OF EXHIBITS

A.    La Hart Amended Class Action Complaint, June 4, 2025

B.    SPLP Notice Letter, July 18, 2025

C.    PHMSA Notice of Proposed Safety Order, February 13, 2025

D.    PHMSA Consent Agreement, April 30, 2025

E.    PHMSA Consent Order, May 2, 2025

F.    SPLP Notice of Intent to Remediate, February 13, 2025

G.    PADEP Response Letter, February 19, 2025

H.    PADEP Notice of Violation, February 18, 2025

I.    SPLP Response to Notice of Violation, March 5, 2025

J.    Administrative Order, March 6, 2025

K.    SPLP Response to Administrative Order, March 31, 2025

L.    La Hart Class Action Complaint, March 27, 2025

M.    Notice of Removal, April 24, 2025

N.    Geltch Amended Complaint, June 20, 2025

O.    Mela Amended Complaint, June 27, 2025

P.    Miller Amended Complaint, June 27, 2025

Q.    Vanni Amended Complaint, June 23, 2025

R.    Wojnovich Amended Complaint, June 18, 2025

S.    Tsolakis Complaint, July 9, 2025

T.    La Hart State Court Injunction Motion – Memorandum of Law, July 9, 2025

U.    Letter from PADEP, July 14, 2025

## I.    **INTRODUCTION**

1.    Plaintiff, Sunoco Pipeline LP ("SPLP"), brings this action against the above-named Defendants Daniel La Hart and Katherine La Hart, Roberta Geltch and James Geltch, Andrew Mela and Heather Mela, W. Scott Miller and Maryida Miller, John Vanni and Angela Vanni, Kevin Wojnovich and Kristine Wojnovich, Basil Tsolakis, Foteini Tsolakis, Gerald Tsolakis, and Mantha Nikoloudaki (the "Named Defendants"), and under Federal Rule of Civil Procedure 23, others similarly situated (the "Defendant Class" as further defined herein) (collectively, "Defendants"), to enjoin Defendants' ongoing violations of the federal Pipeline Safety Act, 49 U.S.C. § 60101 et seq. ("PSA").

2.    Defendants are Pennsylvania residents attempting to use the authority of that state's courts to effectively impose and enforce safety standards for certain of SPLP's interstate pipeline facilities in Pennsylvania and New Jersey.  Defendants' actions violate the PSA, which expressly preempts the prescription of safety standards on interstate pipelines at the state or local level.  49 U.S.C. § 60104(c).  The PSA further expressly authorizes federal suits to enjoin such violations of the Act.  49 U.S.C. § 60121(a).

3.    The PSA vests the U.S. Department of Transportation ("DOT") with exclusive jurisdiction to regulate safety standards for interstate pipeline transportation and interstate pipeline facilities.  49 U.S.C. § 60102.  To ensure that DOT can effectively develop and implement uniform safety standards for pipelines nationwide and without interference, the PSA expressly preempts the adoption or enforcement of "safety standards for interstate pipeline facilities or interstate pipeline transportation" at the state level.  49 U.S.C. § 60104(c).  Since 2004, the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration ("PHMSA") has administered the PSA pursuant to the delegation of the DOT.

4.     Despite the PSA's clear command, Defendants have engaged in a months' long campaign to impose and enforce safety standards on SPLP's interstate pipeline operations. These efforts began following the discovery by SPLP, on January 31, 2025, of a release of jet fuel (or "product") from an SPLP-owned-and-operated pipeline that transports petroleum products from the Twin Oaks terminal in Aston, Pennsylvania to Newark, New Jersey (the "Pipeline" or the "Twin Oaks Pipeline"). Defendants have alleged that they are residents living near the locus of the release.

5.     Starting in March 2025, Defendants began filing serial lawsuits—including a putative class action—in Pennsylvania state court against SPLP[1] with the stated purpose of obtaining equitable and injunctive relief imposing sundry safety standards devised by Defendants for the operation, maintenance, and inspection of the Twin Oaks Pipeline, including shutting down the Pipeline. Unless enjoined by this Court, Defendants will persist in their attempts to invoke the authority of the Pennsylvania state courts to unlawfully insert themselves into the regulation of safety standards for the Pipeline.

6.     Indeed, on July 9, 2025, Defendants Daniel La Hart and Katherine La Hart (the "La Hart Defendants") filed a "Motion for Preliminary Injunction" demanding that a Pennsylvania state court ignore PHMSA's expert determination that the Pipeline could continue to operate and instead order the total "shut down [of] the Pipeline," in blatant disregard of the PSA. As of this

---

[1] Also named as defendants in the state court lawsuits are SPLP's ultimate corporate parent, Energy Transfer LP, as well as another subsidiary of Energy Transfer LP, a company called Energy Transfer (R&M) LLC. These entities do not own or operate the Pipeline so are not Plaintiffs in this action. SPLP has consistently taken the position that Energy Transfer (R&M) LLC was not properly named as a defendant in the state court actions, which PADEP has recently confirmed. *See* Ex. U, July 14, 2025 Letter from PADEP.

filing, that Motion remains pending, the state court having ordered SPLP to respond by Monday, July 21, 2025.

7.      Because the PSA expressly preempts the imposition or enforcement of safety standards for interstate pipelines at the state or local level—*including by state courts*—Defendants' efforts to obtain an injunction from the Commonwealth's courts are unlawful and should be enjoined by this Court.  As the La Hart Defendants have already filed a motion for injunctive relief (on behalf of themselves and a putative class), and the rest of the Named Defendants have demanded the same substantive relief in their state court pleadings, Plaintiff respectfully requests that this Court temporarily restrain the Defendants from pursuing such relief in state court, until such time as preliminary and permanent injunctive relief may issue to terminate any further violation of the PSA.

## II.    PARTIES

8.      Plaintiff, SPLP, owns and operates the Pipeline, which transports petroleum products—including, relevantly, jet fuel—from the Twin Oaks terminal in Aston, Pennsylvania to Newark, New Jersey.  The Pipeline runs under the residential Mt. Eyre Manor neighborhood (part of Washington Crossing) in Upper Makefield Township, Bucks County, Pennsylvania.

9.      Defendants Daniel La Hart and Katherine La Hart (the "La Harts") live in the Mt. Eyre Manor neighborhood in a home constructed after the Pipeline was installed.  An underground aquifer supplies water through residential wells to their home and to other homes in the neighborhood.  In their pending state court action against SPLP, the La Harts seek to represent a putative class of other Pennsylvania citizens who live within an arbitrarily defined, one-mile geographic radius from the locus of the release (the "La Hart Class").

10.     James Geltch, Andrew Mela and Heather Mela, W. Scott Miller and Maryida Miller, John Vanni and Angela Vanni, Kevin Wojnovich and Kristine Wojnovich, Basil Tsolakis,

3

Foteini Tsolakis, Gerald Tsolakis, and Mantha Nikoloudaki—have all brought their own actions against SPLP in state court. These individuals are carved out from the putative La Hart Class, despite their homes' proximity to the release.

11.    As defined further below, the Defendant Class includes all members of the putative class defined by the La Harts in their ongoing, preempted state court action; the La Hart Class is defined by the La Harts as including:

> All Pennsylvania citizens who owned, rented, and/or resided in real properties in Pennsylvania within a one mile radius of 121 Glenwood Drive, Washington Crossing, Pennsylvania (40.271265, -74.876153) . . . during the time period from September 1, 2023 to the present[.][2]

The Defendant Class defined herein includes all the Named Defendants, who are largely carved out from the La Hart Class, but who are also seeking the same injunctive relief in state court against Plaintiff as the La Harts.

12.    The Named Defendants and all members of the Defendant Class (individually or through the La Harts as their representatives) have sought injunctive relief against SPLP in state court, in derogation of the PSA's express preemption provision.

### III.    JURISDICTION AND VENUE

13.    This case arises under the United States Constitution and the laws of the United States, giving this Court jurisdiction under 28 U.S.C. § 1331. This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201 et seq. and 49 U.S.C. § 60121.

14.    Pursuant to 49 U.S.C. § 60121(a)(1)(A), notice of this action was provided on July 18, 2025. A copy of the letter providing such notice is attached hereto as Exhibit B. Under the

---

[2] Ex. A, La Hart Amended Class Action Complaint ¶ 293. SPLP does not concede the validity of the arbitrarily defined La Hart Class, under federal or state law, as a *plaintiff* class. However, by virtue of the La Harts' invocation of this defined set of individuals for the purposes of their state court action, the very same set may form part of a proper *defendant* class.

circumstances of this matter, § 60121(a)(1)(A) does not require that SPLP wait 60 days from the sending of this letter before commencing suit.  Neither DOT, PHMSA, the Attorney General of the United States, nor the Attorney General of Pennsylvania are currently pursuing an administrative or judicial proceeding for Defendants' violation of the PSA.  49 U.S.C. § 60121(a)(1)(B), (a)(1)(C).

15.     Under 28 U.S.C. § 1391, venue is appropriate here because a substantial part of the events giving rise to the claims occurred in the Eastern District of Pennsylvania.

## IV.    FACTUAL ALLEGATIONS

### A.    The Twin Oaks Pipeline

16.     The Twin Oaks Pipeline is a 14-inch diameter pipeline that has helped supply America's energy needs since its initial construction in the late 1950s.  The Pipeline has been upgraded and repaired over time, consistent with PHMSA regulations.  It is approximately 110 miles long and, at the site of the release, the Pipeline's exterior is approximately 0.25 inches thick.

17.     The Pipeline transports petroleum products, including jet fuel, diesel, and gasoline, from the Twin Oaks Terminal in Aston, Pennsylvania, to the Newark Terminal in Linden, Union County, New Jersey (in the Newark-New York metropolitan area).  Once in Newark, the jet fuel is supplied to commercial airlines operating out of the various New York metropolitan area airports.  The Pipeline also transports products to other delivery points along its route.  The Pipeline has a fuel transport capacity of some 120,000 barrels per day (one barrel is equivalent to 42 gallons).

18.     The maximum operating pressure of the Twin Oaks Pipeline is 1200 pounds per square inch gauge (psig).

19.     The United States Department of Transportation Pipeline and Hazardous Materials Safety Administration ("PHMSA") is the federal regulator charged with overseeing interstate pipelines such as the Twin Oaks Pipeline.

**B.      Discovery of the Release**

20.     On January 21, 2025, the Pennsylvania Department of Environmental Protection ("PADEP") advised PHMSA that samples obtained from a residential well in Mt. Eyre Manor, Pennsylvania had indicated the presence of kerosene, a major component of JP-8 jet fuel.  SPLP had previously tested wells in the area, based on odor complaints, but this was the first time well water in the Mt. Eyre neighborhood had tested positive for constituents of jet fuel.  PHMSA notified SPLP of the test results and directed SPLP to investigate the origin of the kerosene.  SPLP responded immediately.

21.     On January 31, 2025, SPLP excavated a portion of the Pipeline along Glenwood Drive in Mt. Eyre Manor and discovered a release of product from the Pipeline.  SPLP shut down the operation of the Pipeline and then closed valves to isolate the particular segment of the Pipeline at issue.  Between January 22, 2025 and January 31, 2025, SPLP sampled the La Harts' well and the wells of nearby residences.  The testing confirmed the presence of product in well water at six residences.

**C.      Response to the Release**

22.     On January 31, 2025, SPLP notified the National Response Center of the leak and shut down a segment of the Pipeline.  SPLP informed PHMSA of its plan to repair the failed section and return the Pipeline to service at a reduced, 80% capacity.

23.     On February 2, 2025, PHMSA's Southwest Region Director informed SPLP by email that he did not object to the repair plan and return to service plan for the Pipeline.

24.     By February 2, 2025, SPLP had completed repairs to the portion of the Pipeline where the release occurred and returned the Pipeline to service.  Inspections and excavations by SPLP since the discovery of the release have identified no other ongoing leakage from the Pipeline.

25.     SPLP has publicly accepted responsibility for the release and is working with PHMSA, PADEP, and the community to remediate the affected area.  The release has been repaired to the satisfaction of PHMSA, which is working closely with SPLP to ensure the prospective integrity of the Pipeline.  Representatives from SPLP and Energy Transfer LP, PHMSA, PADEP, the La Harts, and other community members have attended several town hall meetings regarding the release since January 2025.  During those meetings, residents including the La Harts asked SPLP and regulators to shut down the Pipeline until it is fully excavated and visually inspected for leaks.  PHMSA expressed that was not necessary.

26.     On February 13, 2025, PHMSA issued a Notice of Proposed Safety Order ("NOPSO") to SPLP, outlining proposed remedial requirements, including: reducing the operating pressure of the Pipeline; assessing the integrity of the Pipeline; conducting a leakage survey; and conducting a root cause analysis relating to the release.  Ex. C.  SPLP engaged with PHMSA immediately after the NOPSO was issued and has continued to do so since.

27.     On April 30, 2025, SPLP and PHMSA entered into a Consent Agreement, Ex. D; on May 2, 2025, PHMSA issued a Consent Order, Ex. E, incorporating the Agreement's terms. SPLP agreed to perform the following remedial measures:

- Continue to operate the Pipeline at a 20% pressure reduction;
- Submit a plan to evaluate the integrity of each Type A sleeve[3] on the Pipeline;

---

[3] In their state court action, the La Harts allege that the release stemmed from the use of a Type A sleeve on the Pipeline; these sleeves are typically used to reinforce pipeline segments that are dented or corroded, but not leaking.

- Perform a ground instrument leakage survey or an excavation and evaluation of all Type A sleeves on the Pipeline;
- Prepare and implement a remedial work plan;
- Conduct a root cause failure analysis and submit a final report;
- Conduct a failure history evaluation;
- Evaluate the Pipeline's leak detection system and evaluate necessary corrective measures;
- Complete mechanical and metallurgical testing and failure analysis on the removed portion of the Pipeline;
- Review and assess the effectiveness of SPLP's emergency response plan and amend the plan as necessary; and
- Review and assess the effectiveness of SPLP's public awareness program and amend the program as necessary.

SPLP has already completed several of these requirements and is working with PHMSA to close out the rest. SPLP is required to comply with the Consent Order or face "the assessment of civil penalties as set forth in 49 U.S.C. § 60122 and 49 CFR § 190.223, or in referral to the Attorney General for appropriate relief in a district court of the United States."

### D. PADEP

28.     On February 13, 2025, SPLP filed a Notice of Intent to Remediate under Pennsylvania's Land Recycling Program, relating to cleanup efforts to achieve the statewide health standards for soils and groundwater. Ex. F. The Notice provided PADEP with known facts about the release. PADEP responded via letter dated February 19, 2025. Ex. G. The letter indicated that PADEP had assigned a project officer to the remediation effort.

29.     On February 18, 2025, PADEP issued a Notice of Violation. Ex. H. The Notice requested additional information regarding the release, including an initial plan for remediation. SPLP responded to the Notice on March 5, 2025, answering each of PADEP's requests for information and providing detailed documentation supporting the response. Ex. I. SPLP reiterated its commitment to remediating the affected area, summarized its immediate response efforts, and

provided initial plans and procedures SPLP intended to implement to further investigate and remediate the release.

30.    On March 6, 2025, PADEP issued an Administrative Order, Ex. J, setting out various remedial actions and requirements , including:

- Submitting a proposed Interim Remedial Action Plan describing soil, groundwater, surface water, and vapor intrusion remedial measures;
- Supplying bottled water to residences within a defined area surrounding the release;
- Installing POET[4] systems in residences with specific documented impacts within a defined area surrounding the release;
- Providing sampling and maintenance to the POET systems as necessary;
- Providing daily reports to PADEP of remediation and sampling activities;
- Providing laboratory reports to PADEP on a weekly basis; and
- Submitting a vapor intrusion investigation progress report.

SPLP has completed all of these requirements.

31.    SPLP responded to the Administrative Order on March 31, 2025, reaffirming its commitment to remediating the affected area.  Ex. K.  The response provided updates on SPLP's efforts to comply with PADEP's directives, many of which SPLP had already completed. Additionally, SPLP submitted as directed, and PADEP approved, the required Interim Remedial Action Plan, Proposed Implementation Schedule, and Public Action Plan.

E.    **SPLP's Engagement with the Local Community**

32.    SPLP has endeavored to work with all residents of the affected area, including the La Harts, on testing residents' wells, air quality, and soil, as well as on remediation efforts.  These efforts are above and beyond what SPLP is required to undertake by PADEP with respect to

---

[4] Point of Entry Treatment ("POET") systems treat well water for use in residential and commercial properties.

providing bottled water to residents, installing POET systems within the PADEP's established target area, and maintaining a public webpage where important documents and updates are posted. SPLP has also installed recovery and monitoring wells in the affected area, which are designed to remove any remaining product.

### F.    Defendants' Unlawful Attempts to Regulate the Safety of SPLP's Pipeline Facilities

33.    Defendants have taken (and continue to take) action to impose their own arbitrary safety standards on SPLP's operation of the Pipeline.

34.    Despite the extensive, voluntary efforts by SPLP to cooperatively remediate the effects of the release in coordination with PHMSA and the PADEP, the La Harts chose to initiate their state court case, filing a putative class action complaint against SPLP, Energy Transfer LP, and Energy Transfer (R&M) LLC on March 27, 2025 in the Court of Common Pleas for Philadelphia County.  Ex. L.  The actions of the other Named Defendants have followed.

35.    The state court class action complaint—which was filed by the La Harts individually and on behalf of the putative La Hart class—demanded that the state court enter broad injunctive relief against SPLP, including ordering SPLP to:

- Notice[sic] to all affected persons of the Pipeline Leak and potential dangers and risks presented by the Pipeline Leak;
- **The enjoinment of further operations of the Twin Oaks Pipeline until [SPLP, Energy Transfer LP, and Energy Transfer (R&M) LLC] are able to fully guarantee its safe operation**;
- Provision of full water supply for all homes in the Class;
- Provision of temporary housing and all associated costs to those who reasonably request it as a result of the Pipeline Leak;
- **Installation of a best-in-class leak detection system for the Twin Oaks Pipeline that can actually detect – and guarantee that it will detect – problems in real time**;

10

- **Full restoration and remediation of all environmental contamination including but not limited to groundwater, soil, and wair[sic], to background concentrations**.

36.     The injunctive relief demanded would plainly arrogate to Defendants the right to impose health and safety regulations on SPLP's Pipeline, which the PSA confers exclusively on DOT/PHMSA.  This is apparent from the fundamental inconsistency between these demands and the Consent Agreement entered into by SPLP and PHMSA.  The latter ***permits continued operation of the Pipeline***, while Defendants insist on ***its total shutdown***.

37.     Nor is the La Harts' class action complaint the sole suit brought by Defendants that is preempted by the PSA.  Several multi-party actions have been filed by other of the Named Defendants, each of which seeks comparable injunctive relief against SPLP, including, *inter alia*, "[t]he enjoinment of further operations of the Twin Oaks Pipeline until Defendants are able to fully guarantee its safe operation," "[i]nstallation of a best-in-class leak detection system for the Twin Oaks Pipeline that can actually detect – and guarantee that it will detect – problems in real time," and the "[f]ull restoration and remediation of all environmental contamination including but not limited to groundwater, soil, and air to background concentrations[.]"

38.     The following Pennsylvania residents have brought such actions:

- *Roberta Geltch and James Geltch* (Dkt. No. 250402049): Residents of 107 Spencer Road, Washington Crossing, PA 18977, their initial complaint was filed on April 16, 2025 (an amended complaint followed on June 20, 2025).  Geltch Amended Complaint, Ex. N.

- *Andrew Mela and Heather Mela* (Dkt. No. 250502461): Residents of 123 Glenwood Drive, Washington Crossing, PA 18977, their initial complaint was filed on May 27, 2024 (an amended complaint followed on June 27, 2025).  Mela Amended Complaint, Ex. O.

- *W. Scott Miller and Maryida Miller* (Dkt. No. 250502415): Residents of 105 Spencer Road, Washington Crossing, PA 18977, their initial complaint was filed on May 20, 2024 (an amended complaint followed on June 27, 2025).  Miller Amended Complaint, Ex. P.

- *John Vanni and Angela Vanni* (Dkt. No. 250400887): Residents of 121 Glenwood Drive, Washington Crossing, PA 18977, their initial complaint was filed on April 8, 2025 (an amended complaint followed on June 23, 2025).  Vanni Amended Complaint, Ex. Q.

- *Kevin Wojnovich and Kristine Wojnovich* (Dkt. No. 250402048): Residents of 128 Walker Road, Washington Crossing, PA 18977, their initial complaint was filed on April 16, 2025 (an amended complaint followed on June 18, 2025).  Wojnovich Amended Complaint, Ex. R.

- *Basil Tsolakis*, *Foteini Tsolakis*, *Gerald Tsolakis*, and *Mantha Nikoloudaki* (Dkt. No. 00919): Residents of 128 Glenwood Drive, their initial complaint was filed on July 9, 2025. Tsolakis, et al. Complaint, Ex. S.

39.     Across their many state court complaints, the Named Defendants consistently fail to recognize that the PSA—the controlling federal statute addressing the regulation of interstate pipelines, including the Twin Oaks Pipeline—preempts their demands for injunctive relief.

40.     On April 24, 2025, SPLP (and the other state court defendants) removed the La Harts' case to this Court under the Class Action Fairness Act.  Dkt. 2:25-cv-02072, ECF No. 1. The Notice of Removal laid out the proper basis for the assertion of federal jurisdiction over the claims asserted in state court.

41.     Following removal, the La Harts filed an Amended Complaint on June 4, 2025 and, on June 9, a Motion for Preliminary Injunction demanding sweeping and unprecedented relief as against SPLP (and its codefendants).  Dkt. 2:25-cv-02072, ECF Nos. 21, 22.  In this motion, the La Harts claimed that injunctive relief was necessary to "protect the health and safety" of individuals residing near the site of the release, asking for the following commands to be directed at SPLP:

- Temporarily shut down the Pipeline until the entire Pipeline has been excavated and inspected, or minimally, until at least all segments currently reinforced with Type-A sleeves have been visually inspected;[5]

- Immediately implement and pay all costs associated with the Proposed Environmental Sampling Protocol[6] set forth in the accompanying proposed

---

[5] As part of SPLP's ongoing cooperation with PHMSA, it is already engaged in inspections of all Pipeline segments reinforced with Type A sleeves; no evidence of other releases has been found.

[6] There is already a sampling protocol in place that SPLP is implementing, developed pursuant to the applicable Pennsylvania Department of Environmental Protection's Land Recycling Program Technical Guidance Manual ("Technical Guidance").

order and as supported by the accompanying Declaration of Harvey Cohen, to ensure the health, safety, and welfare of residents is protected, including by expanding the list of analytes that Defendants are currently screening for to include the full range of compounds in the petroleum products released from the Pipeline and by conducting sampling sufficient to evaluate vapor risks and soil contamination;

- Expand and publicly communicate the area for which Defendants shall provide point-of-entry treatment ("POET")[7] water filtration systems at Defendants' cost to the entire area encompassed by the proposed Class, and pay for the maintenance of all POET systems installed for a period at least ten (10) years;

- Reimburse all residents for reasonable out-of-pocket costs expended to prevent potential toxic exposures and protect their health, including but not limited to temporary housing for properties that test positive for toxins, blood testing, medical examinations, the purchase of water, and the installation and maintenance of water or air filtration systems, within thirty (30) days of receiving proof of any such incurred expenses; and

- File with the Court, under seal, a weekly report identifying all toxic substances and contaminants, even at trace levels, that have been found via any testing that has taken place to date or that takes place as a result of the protocol ordered by the Court.[8]

42.     Like the relief demanded in their initial and amended complaints, the La Harts'

Preliminary Injunction Motion plainly sought to impose health and safety standards for the

Pipeline's operation.  Several of these items—including, most notably, shutting down the

Pipeline—have already been *considered and rejected* by PHMSA, the federal regulator possessing

exclusive jurisdiction to issue emergency orders requiring pipeline closure.

43.     On June 10, 2025, this Court set a June 16 hearing date for the La Harts' Preliminary

Injunction Motion; on June 12, SPLP and its codefendants filed a Response in Opposition to the

Motion.  Dkt. 2:25-cv-02072, ECF Nos. 23, 29.

---

[7] SPLP and Energy Transfer LP are already providing POET systems for all homes in the watershed where the release occurred (plus a buffer), beyond the requirements ordered by PADEP.

[8] SPLP and Energy Transfer LP already provide (i) daily and weekly reporting to PADEP, which posts the test results on its website, (ii) copies of the testing data directly to the affected residents, and (iii) copies of the testing data to opposing counsel, who do not bother to open or download most of the files provided—and refuses to share their own testing data with SPLP.

44. On June 16, 2025, however, prior to the contemplated hearing, this Court remanded the La Harts' case back to state court. Dkt. 2:25-cv-02072, ECF No. 34. The remand order is currently on appeal before the Third Circuit.

45. Following remand, on July 9, 2025, the La Harts again filed a Motion for Preliminary Injunction, requesting substantively the same relief as they had in federal court. Ex. T. As of this filing, that motion remains pending with the state court, which has ordered SPLP to respond by Monday, July 21, 2025.

46. As stated, in addition to the La Harts' ongoing state court class action, the other Named Defendants all also have live actions in state court seeking substantively identical, preempted injunctive relief against SPLP. Although these other Defendants have yet to file a motion specifically asking that injunctive relief be issued, Plaintiff reasonably expects (based on their pleadings) that any or all of them may do so imminently.

**G. The Dangers Posed by Defendants' Conduct in Violation of the PSA**

47. Defendants' ongoing efforts to subject SPLP to unauthorized state-level regulation would, if successful, disrupt the uniformity and predictability of the safety standards applicable to SPLP's interstate Pipeline. Such disruption would adversely affect the safety of the Pennsylvania and New Jersey communities, as well as the innumerable travelers who ultimately rely upon the ready supply of jet fuel to New York metropolitan area airports. On information and belief, these airports are among the busiest in the United States and require vast quantities jet fuel daily to sustain their operations.

48. If SPLP were subjected to a patchwork of requirements imposed by state and local authorities, then there would be a substantial risk of inconsistent safety obligations. The ongoing state court litigation activity by Defendants that SPLP asks this Court to enjoin presents an acute

14

example.  SPLP could be faced with the prospect of deciding whether to comply with a plainly preempted state court order to shut down the Pipeline, continued operation of which has been *approved by PHMSA*, the relevant *federal* regulator.[9]

49.      In their state court injunction motion, the La Hart Defendants have made clear their disregard for PHMSA's statute-based regulatory role and expertise.  Although these Defendants (ironically) rely upon a 2024 PHMSA Advisory Bulletin addressing the safety of pipelines constructed before 1970, they go on to claim that PHMSA's Consent Order issued to SPLP "fall[s] well short of what is necessary" to ensure the integrity of the Pipeline.  Ex. T at 8 n. 13.

50.      Following from this disparagement of the responsible federal regulator, the La Hart Defendants go on to demand relief that would, in effect, force SPLP to *violate* the terms of PHMSA's Consent Order.  For example, the Consent Order requires SPLP to collect and provide PHMSA with monthly data on the Pipeline's operating pressure conditions.  Such data would include information regarding any in-line inspection features or anomalies detected by SPLP in the Pipeline during operation.  But if the Pipeline is shut down—as Defendants demand—then SPLP will not be able to generate the very data that PHMSA *demands be submitted regularly*.  On information and belief, such data could be useful in evaluating the safety and integrity of the Pipeline.

51.      Similarly, under the Consent Order, SPLP is obligated to develop and submit to PHMSA detailed remediation plans that, upon PHMSA approval, are incorporated into the Order. But the La Hart Defendants have made clear in their injunction motion that they disagree with the Consent Order's instructions regarding the development of these plans.  *Compare* Ex. E (stating

---

[9] The La Harts are apparently aware that the decision regarding whether the Pipeline may continue to operate does not rest with a state court, as demonstrated by their (fruitless) attempts to convince PHMSA to order a shutdown of the Pipeline.

that SPLP may evaluate potential leakage via a ground instrument leakage survey) *with* Ex. T (arguing that Plaintiff should not be permitted to rely on such a survey and must be ordered by the state court to take some other action).

52.     As stated, if SPLP violates the Consent Order, then it may be subject civil penalties or an enforcement action (in federal district court) by the Attorney General.  SPLP must comply "in accordance with the determination made by the Director," Southwest Region, Office of Pipeline Safety.  Defendants seek to insert themselves into this clearly delineated regulatory relationship, insisting that the Pipeline must be shut down until such time as SPLP demonstrates *to Defendants' satisfaction* that "the Pipeline is operating safely."  The PSA does not entrust such critical decisions to the judgment of private litigants.  Defendants must not be permitted to usurp PHMSA's statute-based mandate to regulate the safety of the Twin Oaks Pipeline, which would present SPLP with the impossible prospect of simultaneously complying with two inconsistent sets of orders emanating from the state and federal levels.

53.     If interstate pipeline operators like SPLP are presented with a jumble of competing and inconsistent regulations, then interstate pipeline safety would suffer, and the increased costs to SPLP's customers would outweigh any potential benefits.  Congress passed the PSA precisely to avoid this result.

## V.    CLASS ALLEGATIONS

54.     SPLP brings this action against each of the Named Defendants individually and as a class action against the Named Defendants as representatives of the Defendant Class.

55.     The Defendant Class consists of all individuals who have asserted a right to injunctive relief against SPLP in state court seeking the shutdown of the Twin Oaks pipeline.  At a minimum, this includes all members of the putative La Hart Class, defined by the La Harts in their pending state court action, i.e., "all Pennsylvania citizens who owned, rented, and/or resided

16

in real properties in Pennsylvania within a one mile radius of 121 Glenwood Drive, Washington Crossing, Pennsylvania (40.271265, -74.876153) . . . during the time period from September 1, 2023 to the present," as well as the individuals who are separately Named Defendants herein.

56.    Excluded from the Defendant Class are SPLP and its employees, officers, director, and its parent or affiliated entities (including Energy Transfer LP and Energy Transfer (R&M) LLC).

57.    This Class Action Complaint is properly brought as a class action against the Defendant Class under Federal Rules of Civil Procedure 23(a) and 23(b)(2).

58.    The prerequisites for certification of the Defendant Class are satisfied here:

    a.    <u>Numerosity</u>: The Defendant Class has numerous members—SPLP estimates that there are at least hundreds of residents living in the geographical area defined for the La Hart Class—thus rendering joinder impractical.[10]

    b.    <u>Commonality</u>: Common questions of law and fact exist as to all members of the Defendant Class. These common legal and factual questions include, without limitation:

        i.    Whether the PSA's preemption provision, 49 U.S.C.A. § 60104(c), prevents private litigants like Defendants from suborning a state court to "adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation";

---

[10] The La Harts estimate that the La Hart Class has "at least one thousand members" (and the Defendant Class defined herein will be slightly larger than the La Hart Class). *See* Dkt. 2:25-cv-02072, ECF No. 21.

    ii.   Whether the injunctive relief sought by Defendants in their various state court actions amounts to an impermissible health or safety regulation under the PSA;

    iii.   Whether the relief sought by Defendants in their various state court actions is nonetheless permissible under the PSA's savings clause, 49 U.S.C. § 60120(c), regarding the "tort liability of any person."

    iv.   Whether the PSA permits a state court to order a regulated entity, like SPLP, to violate the terms of a consent order issued by a federal regulator.

c.  <u>Typicality</u>: The Named Defendants' claims and/or defenses are typical of the claims and/or defenses of the Defendant Class. Most members of the Defendant Class are also members of the putative La Hart Class; as to the latter, the La Harts have already conceded that their personal "claims for environmental restoration and remediation, economic damages, medical monitoring, injunctive relief, and declaratory relief are typical of the claims of the [La Hart] Class members. [The La Harts] and all [La Hart] Class members have been damaged by the same wrongful conduct by [SPLP and its codefendants in the state court actions]." Crucially, all members of the Defendant Class have, through the La Harts as their putative representatives, asserted an entitlement to sweeping injunctive relief from the Commonwealth's Courts as against SPLP. By this federal action, SPLP contests that common claim to relief. Accordingly, the relevant claims and any applicable defenses are shared by all members of the Defendant Class.

d. <u>Adequacy</u>: The Named Defendants are adequate representatives of the Defendant Class because their interests do not conflict with the interests of the Class that they would represent; they have already retained competent counsel experienced in complex class action litigation and who can be expected to litigate vigorously. The interests of the Defendant Class will be fairly and adequately protected by the Named Defendants and their counsel. The La Harts, for example, have already conceded that they "will fairly and adequately protect and represent the interests of the [La Hart] Class."

e. <u>Rule 23(b)(2)</u>: SPLP has acted and/or refused to act on grounds that apply generally to the Defendant Class, so that a temporary restraining order, preliminary and final injunctive relief, and declaratory relief are appropriate respecting the Defendant Class as a whole. The Named Defendants and the Defendant Class have brought claims in state court (either individually or through representative parties) against SPLP, demanding injunctive relief, including the shutdown of the Twin Oaks Pipeline. SPLP has refused to take such drastic, damaging, and unnecessary action in response to the Defendants' demands (which are preempted by the PSA). Thus, class certification pursuant to Rule 23(b)(2) is appropriate here.

59.     Accordingly, this Court should certify the Defendant Class under Federal Rule of Civil Procedure 23.

## VI.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Violation of the Pipeline Safety Act – 49 U.S.C. § 60101 et seq.)**

60.     SPLP repeats and incorporates herein the allegations in paragraphs 1–59.

61.    The PSA expressly preempts all regulation of safety standards for interstate pipelines by state or local authorities.  Specifically, the PSA states: "A State authority [*including a state court*] may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."  49 U.S.C. § 60104(c).

62.    The Pipeline, owned and operated by SPLP, is an interstate pipeline facility within the meaning of the PSA.  *See* 49 U.S.C. § 60101(a)(4), (a)(7).

63.    The state courts of the Commonwealth of Pennsylvania are state authorities within the meaning of the PSA.  *See* 49 U.S.C. § 60104(c).

64.    Defendants have attempted and continue to attempt to impose and enforce safety standards on SPLP's interstate Pipeline, through the activities and conduct described herein. Defendants' efforts to impose and enforce safety standards on SPLP's Pipeline violate the express preemption provisions of the PSA.  *See* 49 U.S.C. § 60104.

65.    SPLP has been and continues to be injured as a result of Defendants' efforts to, without lawful authority, impose and enforce safety standards on SPLP's Pipeline.

66.    Defendants' efforts to regulate safety at SPLP's Pipeline undermine the exclusive, federally controlled safety regime established by the PSA.

67.    The PSA provides a private right of action to sue in federal court for "an injunction against another person (including the United States Government and other governmental authorities to the extent permitted under the 11th amendment to the Constitution) for a violation" of the PSA or any "regulation prescribed or order issued under" the PSA.  49 U.S.C. § 60121(a).

68.    The notice of violation required under 49 U.S.C. § 60121(a)(1)(A) was provided to PHMSA and counsel for the Named Defendants on July 18, 2025.  Ex. B.

69.     SPLP seeks preliminary and permanent injunctive relief, pursuant to 49 U.S.C. § 60121(a), to remedy Defendants' violations of the PSA.  Specifically, SPLP seeks a temporary restraining order and preliminary and final injunctions to prevent Defendants from imposing or enforcing safety standards on SPLP's Pipeline, through litigation in state court.

70.     A real and actual controversy has developed between SPLP and Defendants concerning Defendants' attempts to invoke the authority of the state courts of the Commonwealth of Pennsylvania to impose and enforce safety standards on the Pipeline.  SPLP maintains that, under the PSA, Defendants have no right to invoke state authority, in the form of the state courts, to obstruct the uniform, federal regulation of the interstate pipeline system, including the Pipeline.

71.     SPLP seeks declaratory relief to remedy Defendants' violations of the PSA.  The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to remedy Defendants' violations of the PSA with a declaratory judgment.  SPLP seeks a judgment from this Court declaring that the PSA preempts Defendants' efforts to control, dictate, or otherwise regulate the safety, design, construction, installation, testing, inspection, training, staffing, maintenance, and operations of SPLP's Pipeline through state court litigation—such litigation must therefore cease at once.

## VII.    PRAYER FOR RELIEF

WHEREFORE, SPLP demands judgment as follows:

1. A declaration that Defendants' unauthorized efforts to impose or enforce safety standards on SPLP's Pipeline violate the federal Pipeline Safety Act, 49 U.S.C. § 60101 et seq., which preempts Defendants' efforts to control, dictate, or otherwise regulate the safety, design, construction, installation, testing, inspection, training, staffing, maintenance, and operations of the Pipeline through the state courts.

21

2. Award a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting Defendants' continuing and threatened violation of the Pipeline Safety Act and the Supremacy Clause of the United States Constitution. Said relief should command the La Harts to immediately withdraw their pending Motion for Preliminary Injunction, and further order that no Defendant may take any further action to pursue an injunction against SPLP (or its affiliates) that is preempted by the PSA.

3. A determination that this lawsuit may be maintained as a defendant class action under Federal Rule of Civil Procedure 23 and that this Court certify the Defendant Class and designate the Named Defendants as the representatives of that Class.

4. An award of SPLP's costs and attorneys' fees incurred in bringing this action.

5. Such other and further relief as the Court deems just and appropriate.

Date: July 18, 2025

Respectfully submitted,

*/s/ Laura Hughes McNally*
MORGAN, LEWIS & BOCKIUS LLP
*Laura Hughes McNally (ID No. 310658)
2222 Market Street
Philadelphia, PA 19103-3007
(215) 963-5000
laura.mcnally@morganlewis.com

Duke K. McCall, III (*pro hac vice*)
Randall M. Levine (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000
duke.mccall@morganlewis.com
randall.levine@morganlewis.com

MANKO, GOLD, KATCHER & FOX LLP
Diana Amaral Silva
Robert D. Fox
Three Bala Plaza East
Suite 700
Bala Cynwyd, PA 19004
484-430-2347
dsilva@mankogold.com
rfox@mankogold.com

*Counsel for Plaintiff Sunoco Pipeline LP*

## **CERTIFICATE OF SERVICE**

I, Laura Hughes McNally, hereby certify that on this 18th day of July, 2025, a true and correct copy of Plaintiff's Class Action Complaint for Declaratory and Injunctive Relief was electronically filed and is available for viewing and downloading from the Court's ECF system.

*/s/ Laura Hughes McNally*
Laura Hughes McNally (ID No. 310658)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-3007
(215) 963-5000
laura.mcnally@morganlewis.com