**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUNOCO PIPELINE LP,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL LA HART, *et al.*,<br><br>Defendants. | Case No. 2:25-cv-03694 |

**RESIDENTS' REPLY MEMORANDUM**
**<u>IN SUPPORT OF MOTION FOR SANCTIONS</u>**

## TABLE OF CONTENTS

I. Residents Are Entitled to Recover Their Costs ........ 3

II. The Record Demonstrates that Sanctions Are Warranted ........ 4

A. SPLP's counsel knew or should have known that SPLP's claims were frivolous. 4

B. SPLP ignores the context that renders sanctions appropriate. ........ 6

## TABLES OF AUTHORITY

**Cases** **Page(s)**

*Adams v. Teamsters Loc. 115*,
678 F. Supp. 2d 314 (E.D. Pa. 2007) .......... 3

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*,
86 F.4th 1204 (8th Cir. 2023) .......... 6

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*,
532 U.S. 598 (2001) .......... 3

*C.S. v. HealthPlus Surgery Ctr., LLC*,
No. 19-cv-964, 2020 WL 6074457 (D.N.J. Oct. 14, 2020) .......... 4

*Callicrate v. Farmland Indus., Inc.*,
139 F.3d 1336 (10th Cir. 1998) .......... 3

*County of Morris v. Nationalist Movement*,
273 F.3d 527 (3d Cir. 2001) .......... 3

*Hallstrom v. Tillamook County*,
493 U.S. 20 (1989) .......... 5

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
469 F. Supp. 3d 357 (E.D. Pa. 2020) .......... 4

*In re Paoli R.R. Yard PCB Litig.*,
221 F.3d 449 (3d Cir. 2000) .......... 3

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
278 F.3d 175 (3d Cir. 2002) .......... 4

*Loftus v. Se. Pa. Transp. Auth.*,
8 F. Supp. 2d 458 (E.D. Pa. 1998) .......... 5

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) .......... 3

*Matthews v. Freedman*,
128 F.R.D. 194 (E.D. Pa. 1989) .......... 4

*Ogbudimkpa v. Ashcroft*,
342 F.3d 207 (3d Cir. 2003) .......... 6

*Pearson v. Granitz*,
No. 20-cv-0907, 2020 WL 1625585 (E.D. Pa. Apr. 2, 2020) .......... 3

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999) .................... 6

*Univ. Hosps. of Cleveland v. Emerson Elec. Co.*,
202 F.3d 839 (6th Cir. 2000) .................... 6

*Williams Pipe Line Co. v. City of Mounds View, Minn.*,
651 F. Supp. 551 (D. Minn. 1987) .................... 6

**Statutes**

49 U.S.C. § 60121(b) .................... 3

49 U.S.C. §§ 60112(d), 60117(p) .................... 5

Residents are the victims of SPLP's negligent and reckless operation of a hazardous liquid pipeline in their neighborhood. Toxic constituents of the products that SPLP's pipeline leaked have been found in the private well water of named Residents. Accordingly, Residents sued SPLP in various cases, which remain ongoing in state and federal court, to recover for their personal injuries and property damage arising from the leak. *This* case was about SPLP's decision to retaliate against Residents—the victims of its leak—for seeking relief against it in those other ongoing matters. Residents seek an order for costs, to which they are entitled under the federal rules and the Pipeline Safety Act ("PSA") as the prevailing party in this case. Residents also seek an order for sanctions because SPLP's retaliatory conduct—which it continues to assert its purported right to engage in—requires intervention by the Court.

SPLP's response misses the forest for the trees. SPLP focuses (wrongly) on accusing Residents of mischaracterizing and distorting the record before this Court, without ever answering the fundamental questions presented by the record: Why did SPLP choose this course of action? Why did SPLP bring this baseless standalone offensive litigation in federal court, rather than raise the issues in the ongoing litigation from which they arose? Why did SPLP file this case and its motion for a temporary restraining order when it did? Why did it fail utterly to provide Residents or the federal government the advance notice clearly required by law? Why did SPLP seek to enjoin Residents from pursuing relief unrelated to pipeline operations under the framework of an alleged PSA violation? Why did SPLP name in its complaint all of—and only—the individuals represented by the undersigned counsel who had filed state court cases, regardless of whether they had moved for any injunctive relief against SPLP? And why does SPLP maintain that it continues to have a right to pursue a PSA violation claim against Residents, even when no injunction request

is pending and after Residents offered to stipulate that they would not seek any future injunctive relief that would interfere with SPLP's pipeline operations?

To the extent SPLP attempts to answer any of these questions, its responses fail. SPLP had significantly more than 60 days' notice of the requests in Residents' state court complaints that SPLP alleges constitute the underlying PSA violations, yet delayed in giving notice. SPLP suffered no (even purported) immediate prejudice from the La Hart Residents' motion for temporary injunctive relief in state court because it had (and took) the opportunity to present all of its arguments concerning PSA preemption to the state court before the state court considered the motion. And although SPLP may have included other residents as absent members of the putative defense class, it sought to impose statutory costs and fees against only the named Residents.[1]

Other questions remain unanswered. For example, through multiple rounds of both trial court and appellate briefing, SPLP has yet to articulate a good faith basis for arguing that the La Hart Residents' requests for the expanded provision of water filtration systems, or for the reimbursement of out-of-pocket expenses related to preventing toxic exposures, were requests that violated the PSA. Yet SPLP sought in this suit to enjoin the state court from ordering even that public-health-related relief. *See* Compl. ¶¶ 41–42, ECF 1; TRO Mot., ECF 2.

Residents are the victims here, but they are not seeking to recover for wrongs done against them in this motion. They will achieve civil justice in their state court actions. Residents in this case seek merely what they are entitled to for successfully defending against this vexatious lawsuit, and an order and judgment sufficient to dissuade SPLP from engaging in similar tactics against Residents moving forward.

[1] Even if injunctive relief in this litigation would have bound absent class members, it is unlikely a cost-shifting order would have. Significant due process concerns would arise from trying to impose liability for costs and fees on absent class members.

## I. Residents Are Entitled to Recover Their Costs

Residents are indisputably the prevailing party in this litigation. They have "been awarded some relief by the court." *County of Morris v. Nationalist Movement*, 273 F.3d 527, 536 (3d Cir. 2001) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 603 (2001)). Namely, Residents obtained a mandate from the Third Circuit for dismissal of this case without prejudice.

SPLP's argument that "dismissal *without prejudice* does not confer prevailing-party status" (ECF 28 at 19, emphasis in original) is contrary to Third Circuit law. The Third Circuit follows the "majority rule" that defendants can be prevailing parties even when an action is dismissed without prejudice. *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 471 n.10 (3d Cir. 2000).[2] Thus Residents, who achieved a dismissal of SPLP's PSA complaint, are entitled to costs under Rule 54(d), regardless of whether the Court finds them entitled to costs pursuant to 49 U.S.C. § 60121(b). *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 380–87 (2013) (statutory provision providing for costs to a prevailing defendant in an action "brought in bad faith and for the purpose of harassment" does not displace a court's discretion to award costs under Rule 54(d)).

Residents are further entitled to recover their costs pursuant to 49 U.S.C. § 60121(b) because SPLP's PSA claim was "unreasonable, frivolous, or meritless." Claims that are barred on their face are legally frivolous, lack merit, and are not reasonably brought. *See Pearson v. Granitz*, No. 20-cv-0907, 2020 WL 1625585, at *2–4 (E.D. Pa. Apr. 2, 2020) (claims that are time-barred

---

[2] Although some courts have found it appropriate to deny costs when a dismissal without prejudice on jurisdictional grounds results in a new suit commencing in state court where the matter of costs can be resolved, such scenarios are distinct from the facts of this case—here, there is no other venue for the prevailing defendant to recover the costs of defending the suit. *See Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1342–43 (10th Cir. 1998) (one defendant dismissed without prejudice was entitled to costs, but the defendants named in a subsequent state court suit could recover only if they prevailed in the state court); *see also Adams v. Teamsters Loc. 115*, 678 F. Supp. 2d 314, 324 (E.D. Pa. 2007) (applying *Callicrate*).

and barred by *res judicata* are "legally frivolous" such that complaint amendment would be futile); *C.S. v. HealthPlus Surgery Ctr., LLC*, No. 19-cv-964, 2020 WL 6074457, at *3 (D.N.J. Oct. 14, 2020) (claims that are "clearly barred by the statute of limitations" are "patently frivolous"). SPLP's claim in this case was non-justiciable for a litany of reasons, including (as the Third Circuit held) that the PSA expressly prohibits a claim brought without sufficient notice. SPLP's decision to file its complaint anyway was not reasonable.

## II. The Record Demonstrates that Sanctions Are Warranted

SPLP argues that the record is insufficient to establish the fourth element of Section 1927 sanctions, that counsel's conduct in unreasonably or vexatiously multiplying the proceedings was done "in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). But courts determine bad faith based on the litigation conduct "in its totality," even when each single instance of misbehavior might on its own be insufficient to warrant sanctions. *Id*. at 189. "Bad faith may also be inferred where a party pursues claims that are clearly frivolous." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 469 F. Supp. 3d 357, 360–61 (E.D. Pa. 2020) (internal quotation omitted); *see also Matthews v. Freedman*, 128 F.R.D. 194, 206–07 (E.D. Pa. 1989) (pursuit of claims after receiving notice that they were time-barred demonstrated bad faith), *aff'd*, 919 F.2d 135 (3d Cir. 1990).

### A. SPLP's counsel knew or should have known that SPLP's claims were frivolous.

SPLP admits that it knew it had not complied with the PSA's pre-suit notice requirement, and indeed has been candid about its non-compliance from the start of this lawsuit. SPLP argues that its candor should suffice to insulate it from sanctions, but Section 1927 does not require a finding of deception or fraud on the court. Indeed, zealous advocacy of a "patently frivolous" claim

is a sufficient basis for a bad faith finding. *Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 458, 461 (E.D. Pa. 1998), *aff'd*, 187 F.3d 626 (3d Cir. 1999), *cert. denied*, 528 U.S. 1047 (1999).

Here, SPLP—under its own theory that pleaded requests for injunctive relief in a complaint constitute PSA violations[3]—had well over 60 days during which it could have provided notice of the alleged PSA violations and complied with the statute before filing its lawsuit and moving for a temporary restraining order. SPLP ignores this context, and instead insists that the La Hart Residents' motion for injunctive relief in state court created an exigency.[4] But the record shows that SPLP had notice of even that purported "exigency" long before it came to pass—the La Harts pleaded a request for injunctive relief in their original state court complaint, filed a motion to remand their action to state court before filing their motion for a preliminary injunction, and informed SPLP through their counsel that following remand they would continue to seek injunctive relief in state court. *See* ECF 20-1. Further, SPLP argued in its opposition to the motion for injunctive relief in state court that the PSA prohibits the state court from issuing any such relief—demonstrating that there was no exigency because it had a full and fair opportunity to present its defenses in state court. And of course, for the same reasons that SPLP lacked standing for this

---

[3] SPLP's theory of the case is meritless, as has been briefed extensively. *See, e.g.*, ECF 20-1 at 12–13. Nonetheless, SPLP named 14 of the 16 named Residents as individual defendants based on this theory and sought to impose statutory fees and costs on them under the PSA on this basis.

[4] The idea that an exigency could justify a citizen suit under the PSA without notice to PHMSA is of course contrary to the purpose of the statute, which is why the Third Circuit along with every other circuit to consider the theory has rejected it. The PSA empowers PHMSA to prevent violations and to issue emergency orders when necessary to prevent imminent violations. *See, e.g.*, 49 U.S.C. §§ 60112(d), 60117(p). If SPLP's intent had been to expeditiously prevent or remedy a PSA violation, rather than intimidate Residents and interfere with legal proceedings, it would have given PHMSA notice as early as practicable and relied on PHMSA to enforce the statute. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 30 (1989) ("[C]ompliance with the notice requirement will trigger appropriate federal or state enforcement actions to prevent serious damage.").

lawsuit under Article III,[5] there was no exigency because SPLP's theory of its injury relied on the discretionary future conduct of a state court judge. SPLP's pursuit of a PSA claim in violation of the PSA's notice requirement was thus patently frivolous, both because there was no legal basis to argue an exception to the statute,[6] and because even if SPLP had a non-frivolous legal argument there was no factual support for the supposed exigent circumstances alleged.

### B. SPLP ignores the context that renders sanctions appropriate.

SPLP's response ignores the broader context of this litigation, but the Court should consider this context in its analysis of the sanctions request. As discussed, the record demonstrates that SPLP's failure to comply with the PSA does not reflect an intent to respond to a new exigency—SPLP intended to multiply proceedings by presenting its argument simultaneously to two different judges in different jurisdictions, giving it two bites at the apple. That kind of gamesmanship should not be permitted.

---

[5] The Third Circuit did not reach or analyze whether the Court had subject matter jurisdiction or whether SPLP had standing, including in its footnote 3. Federal courts of appeals regularly caution against inferring such holdings from unexplained comments. *See Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n.7 (3d Cir. 2003) (declining to infer that the Third Circuit had previously resolved a question about the district court's jurisdiction based on a stray comment in a prior case); *see also Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204, 1217 (8th Cir. 2023) ("The point is that we should not read too much into a stray comment about a potentially different issue."); *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 848 n.6 (6th Cir. 2000) (refusing to presume that "footnote tersely stating [the conclusion] without discussion" constituted law of the case). Nor was the Third Circuit required to reach the issue. In the face of multiple challenges to justiciability, courts have discretion to resolve a straightforward challenge before resolving subject matter jurisdiction, and that is the choice the Third Circuit made here. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

[6] SPLP's continued reliance on *Williams Pipe Line Co. v. City of Mounds View, Minn.*, 651 F. Supp. 551 (D. Minn. 1987), is misplaced. *Williams Pipe* predates the Supreme Court's decision in *Hallstrom*, and its analysis of the notice requirement in a predecessor statute to the PSA has not been even persuasive authority for over 35 years. Further, even in *Williams Pipe*, which concerned a counterclaim rather than a citizen suit, the court found that both the opposing party and the federal government had been given actual notice more than 60 days in advance of the filing. *Id*. at 564.

SPLP's response ignores that its litigation positions in this case were not taken in defense of any rights it holds in the underlying litigation. SPLP continues to avail itself of its due process rights in the underlying cases, including its right to raise any PSA-based preemption defenses to any injunction sought. This lawsuit was a standalone *offensive* effort seemingly to retaliate against and intimidate Residents, which had the effect of multiplying proceedings, and which created the risk of inconsistent rulings affecting the same underlying litigation. This lawsuit was never necessary. Absent sanctions, SPLP will have gotten away with imposing time and resource costs on Residents (innocent victims here) and the Court, in pursuit of a patently frivolous claim and a legal theory that it simultaneously presented to multiple presiding judges.

SPLP further mischaracterizes the correspondence between its counsel and the undersigned. *See* ECF 28-2. Before Residents' counsel's offer, SPLP had stated its intent to re-file this case despite there no longer being any injunction motion pending against it in state court, both during oral argument at the Third Circuit (ECF 28-3 at 3, 17:18–18:4) and during a meet and confer described in the correspondence. Residents, seeking finality, offered in good faith to resolve this issue without motion practice by stipulating that they would not seek the offending injunctive relief based on the current circumstances. SPLP not only refused to negotiate but responded that even if all Residents amended their complaints to remove the requested relief, SPLP would at most "evaluate its position based on those pleadings." ECF 28-2.

SPLP's position makes abundantly clear that (1) SPLP believes its litigation conduct was permissible, and (2) SPLP intends to replicate this case and further multiply these proceedings. This lawsuit was never necessary or meritorious, and the zealous pursuit of patently frivolous claims is evidence of bad faith. The full context of SPLP's litigation conduct merits intervention and policing by this Court, whether via Section 1927 or the Court's inherent authority.

Dated: October 21, 2026

Respectfully submitted,

*/s/ Shanon J. Carson*

Shanon J. Carson (Bar No. 85957)
Y. Michael Twersky (Bar No. 312411)
Joseph E. Samuel, Jr. (Bar No. 327645)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4656
scarson@bergermontague.com
mitwersky@bergermontague.com
jsamuel@bergermontague.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October, 2026, I caused the above Residents' Reply Memorandum in Support of Motion for to be filed with the Court's ECF filing system, which then served all counsel of record.

Dated: October 21, 2026

*/s/ Shanon J. Carson*
Shanon J. Carson